**GUTTILLA MURPHY ANDERSON, P.C.**
Dawn M. Maguire (Ariz. No. 20368)
5415 E. High St., Suite 200
Phoenix, Arizona 85054
Email: dmaguire@gamlaw.com
Phone: (480) 304-8300
Fax: (480) 304-8301

Attorneys for Chapter Trustee Brian Mullen

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>JOSEPH CARL MULAC, III AND MARY ELLEN MULAC,<br><br>            Debtors. | Chapter 7<br><br>Case No. 2:20-bk-04173-BKM<br><br>**MOTION TO APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS**<br><br>Re:    7411 E. Jackrabbit Road<br>        Scottsdale, AZ 85250<br>        APN: 173-16-046 |

Brian Mullen, the Chapter 7 Trustee in the above captioned case ("Trustee"), by and through undersigned counsel, hereby requests that the Court enter an Order allowing the sale of real property, pursuant to 11 U.S.C. §§ 363(b) and (f), and § 506(c). Specifically, the Trustee requests an Order authorizing the sale of the bankruptcy estate's interest in the real property located at 7411 E. Jackrabbit Road, Scottsdale, AZ 85250 – APN: 173-16-046 ("Property"), free and clear of all claims, liens, adverse interests and encumbrances, with a carve out of the sales proceeds to benefit the bankruptcy estate. This *Motion to Approve Sale of Real Property Free and Clear of Liens* ("Motion") is supported by the following Memorandum of Points and Authorities, incorporated herein by this reference, and all exhibits thereto.

DATED: November 13, 2020

                    **GUTTILLA MURPHY ANDERSON, P.C.**

                    */s/ Dawn M. Maguire #20368*
                    Dawn M. Maguire
                    Attorneys for Chapter 7 Trustee

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. JURISDICTION AND BACKGROUND

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On April 22, 2020, Joseph Carl Mulac, III and Mary Ellen Mulac ("Debtors") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

3. Brian Mullen is the duly appointed and acting Chapter 7 Trustee in this proceeding.

4. The Debtors listed their ownership interest in the Property on Schedule A.

5. Pursuant to 11 U.S.C. § 541, the Property is property of the bankruptcy estate.

6. Pursuant to Amended Schedule C [Docket No. 32], Debtors do not claim an exemption in the Property, and are not entitled to an exemption in the Property.

7. The Debtors are not residing in the Property and are aware of the Trustee's sale of the Property.

## B. SUMMARY OF THE PROPOSED SALE

1. On June 22, 2020, the Trustee moved to employ BK Global Real Estate Services ("BKRES") and UrbanCiti Realty & Property Management ("Listing Agent") to assist in the marketing and sale of the Property.

2. On June 22, 2020, the Court entered the Order approving BKRES and Listing Agent's employment. See Docket No. 47.

3. The Trustee, through BKRES and Listing Agent, received an offer from Robert Chang ("Buyer") to purchase the Property for the sum of $2,450,000.00 with a buyer's premium of $30,000.00 ("Purchase Price"). See Contract and Addendum 3 for price and reduction.

4. The Purchase Price shall be paid in certified funds at close of escrow. Buyer has deposited $15,620.00 earnest money, currently held by American Title Service Agency, LLC at 7033 E. Greenway Parkway, Ste. 150, Scottsdale, AZ 85254, Escrow Agent: Tracy-Ann Chavarria, Branch Manager/Escrow Officer; phone: 480-365-7222; direct line: 602-424-7366;

and email: tchavarria@atsaaz.com.  _See_ Addendum 2 for Escrow contact information.

5.      The terms of the proposed sale are summarized hereafter and are fully described and set out in the Residential Resale Real Estate Purchase Contract, Addendum 1, Addendum 2, Bankruptcy Addendum A, Affiliated Business Arrangement Disclosure Statement, Residential Buyer's Inspection Notice and Seller's Response (BINSR), Addendum 3, and Short Sale Affidavit (collectively, "Contract"), a true and correct copy of which are attached hereto as **Exhibit A** and incorporated herein by this reference.  **Interested Parties are encouraged to review the Contract in its entirety.  In the case of any discrepancy between the Contract and this Motion, the terms set forth in the Contract shall control.**

6.      The proposed Contract requires Wells Fargo, the first and second lien holder, to accept less than the outstanding sums due on Wells Fargo's two outstanding Deeds of Trust for the Property.  The third Deed of Trust on the Property will not receive payment of its debt on the over-secured Property.

7.      The Trustee has received numerous offers on the Property.  Given the value of the Property, and the condition of the Property, quite a few offers fell through or were withdrawn during the due diligence period.

8.      The Trustee has determined that the Buyer's offer is the highest and best offer received to date.  Accordingly, the Trustee seeks authority to enter into the Contract with the Buyer, or nominee, or into a similar contract for the sale of the Property in substantially the same form as the Contract, subject to higher and better offers by competing bidders at the hearing to approve the sale of the Property.

9.      Pursuant to 11 U.S.C. § 363(f), the Property is to be sold to the Buyer free and clear of all claims, liens, adverse interests and all such claims, liens, adverse interests and encumbrances automatically attach to the proceeds of the sale in the same effect and priority as they have to the Property.

10.     The Property is being sold as is/where is.  The Buyer is aware that he is purchasing the Property "as is/where is", in its current condition.  The Buyer is aware of the plumbing issues, leaks and potential mold issues, structural issues, appliance issues, pool equipment issues, roofing

\\SERVER03\client\Mutac; Joseph Carl, III and Mary Ellen Mutac\291 2001\Trustee Sale Documents\411785.docx

issues, door and cabinet issues, and all other outstanding issues, given the Residential Buyer's Inspection Notice and Seller's Response (BINSR) report. The Buyer elected for a price reduction with full knowledge of the issues. See BINSR and Addendum 3.

11. The Trustee believes that the Property is encumbered by a first mortgage held by Wells Fargo in the approximate amount of at least $3,013,880.00. However, Wells Fargo agreed to the short sale of the Property and has agreed to accept less than the full amount as payment in full of its first lien. See Short Sale Affidavit.

12. The Trustee believes that the Property is encumbered by a second mortgage held by Wells Fargo in the approximate amount of at least $742,343.19. However, Wells Fargo agreed to the short sale of the Property and has agreed to release its lien against the Property for $0 consideration.

13. The Trustee believes that the Property is encumbered by a third deed of trust, held by The Wade Trust, in the approximate amount of $975,000.00. However, given the Property value, The Wade Trust has agreed to release its lien in exchange for an unsecured claim in this bankruptcy case in the amount of $1,086,073.43. The Wade Trust has two claims on file: Claim No. 1 for $1,086,073.43 as a secured claim and Claim No. 5 for $1,002,992.47 as an unsecured claim. The Order approving the Sale will deny Claim No. 5 in its entirety and amend Claim No. 1 in the amount of $1,086,073.43 as a timely filed unsecured claim.

14. Shared real estate agents' commissions in the amount of 6% of the total purchase price are to be paid by Wells Fargo pursuant to the Contract between the Trustee's agent, the Buyer's agent and BK Global.

15. All closings costs paid are to be paid by Wells Fargo and/or Buyer, pursuant to the Contract.

16. All property taxes paid are to be paid by Wells Fargo upon closing pursuant to the Contract.

17. In the event that the sale of the Property triggers a taxable event, the bankruptcy estate will only be responsible for any taxes based on the surcharge recovery to the bankruptcy estate and not the sale in its entirety.

18.     The bankruptcy estate is not responsible for payment of any fees or costs in this sale.

19.     The Trustee, for the benefit of the bankruptcy estate, will recover a surcharge of 5% from Wells Fargo, or $125,000.00 plus the $30,000.00 buyer's premium (paid by the Buyer pursuant to the Contract- See Addendum 1) for a total of $155,000.00, for the sale of the Property. Payment to the bankruptcy estate of $155,000.00 is pursuant to 11 U.S.C. § 506(c).

20.     There is no current appraisal of the Property.

21.     The Trustee is informed and believes that the Buyer has no connection or relation to the Debtors and that the Buyer is a good faith purchaser. Accordingly, the Buyer seeks a determination that Buyer is entitled to the protections afforded under 11 U.S.C. §363(m).

22.     In order to reduce accruing post-petition administrative expenses, the Trustee requests that the 14 day stay set forth in Fed.R.Bankr.P. 6004(h) be waived so that the sale of the Property may immediately close.

23.     The Contract calls for a close of escrow date no later than 21 days on or before the Court Order authorizing the sale. However, the Property has high utility expenses being carried by Wells Fargo, as well as the fact that the Property is sitting vacant, therefore the parties wish to close this sale as soon possible.

24.     Bankruptcy Court approval of the sale of the Property is a condition precedent and the Contract shall be null and void if such approval is not obtained.

25.     The sale of the Property shall be "as is/where is", the Trustee makes no warranties, implied or expressed, regarding the Property.

26.     As set forth above, this sale is subject to higher and better offers to ensure that a fair and equitable value is attributed to the Property for the benefit of all concerned. The Court retains authority to control the bidding process and to determine whether competing bids are higher and/or better offers.

27.     Absent Court Order to the contrary, any successful bidder must comply with the terms of the Contract, including the deadlines set forth in the Contract wherein due diligence has expired, with the sole exception being that the Purchase Price will be the amount of the bid

\\SERVER03\client\Mulac, Joseph Carl, III and Mary Ellen Mulac\291-2001\Trustee Sale Documents\411785.docx

approved by the Court.

28.     Any interested party wishing to bid at the Sale Hearing must qualify as a bidder to present a bid at the sale hearing.  To qualify as a bidder, the interested party must provide, at least 48 hours before the sale hearing: 1) pre-qualification letter to Trustee or Trustee's counsel, 2) evidence of ability to fund the sale transaction in its entirety within 21 days of the sale hearing to Trustee or Trustee's counsel, and 3) deposit $15,620.00 in certified funds into escrow with American Title Service Agency matching the Buyer's deposit.

29.     In the event the successful bidder fails to timely comply with the requirements set forth in the Contract, the Sale Motion or the Sale Order, the parties can certify a back up bidder at the sale hearing.  To remain eligible as a backup bidder, the unsuccessful bidder must leave their $15,620.00 escrow deposit with American Title Service Agency, LLC.  If the successful bidder defaults, the Trustee will immediately notify the second highest eligible bidder by telephone and facsimile ("Bidder Notice"), who shall thereafter have seven (7) days to close on the sale of the Property.  Any unsuccessful bidder who elects to remain as an eligible backup bidder shall be entitled to the immediate return of its Escrow Deposit upon a closing by and between Seller and any other party.  Any backup bidder who receives a Bidder Notice and fails to timely close shall forfeit their Escrow Deposit.  Nothing herein shall affect Seller's rights to seek additional damages or Seller's right to seek an action for specific performance against any party.

## C. LEGAL ARGUMENT

30.     Pursuant to 11 U.S.C. § 363(b)(1), the Trustee is authorized, after notice and a hearing, to use, sell or lease property of the estate outside the ordinary course of business.

31.     The Trustee has determined that the sale of the Property pursuant to the terms set forth in **Exhibit A** is in the best interest of the bankruptcy estate and all creditors herein.

32.     Pursuant to 11 U.S.C. § 363(f), the Trustee requests that the sale of the Property be free and clear of all claims, liens, adverse interests, and encumbrances.

33.     The Trustee believes that the sale will generate funds for unsecured creditors given the recovery to the bankruptcy estate under 11 U.S.C. § 506(c).

34. The Trustee requests authority to accept the surcharge of $155,000.00 from the sale of the Property.

8. The Trustee requests authority for the servicing agent to disburse the following amounts from the sale proceeds:

      a.      Ordinary costs of sale, including all taxes;

      b.      All other costs and expenses outlined in the Contract;

      c.      A real estate commission of not more than 6% of the Purchase Price to the Trustee's agent, Buyer's agent and BK Global;

      d.      Agreed upon payment to Wells Fargo for its first lien against the Property;

      e.      No payment to Wells Fargo for its second position lien against the Property;

      f.      An Amended Claim No. 1, as a timely filed unsecured claim, for The Wade Trust for the third position lien against the Property; and

      g.      $155,000.00 payment to the bankruptcy estate in care of the Trustee.

**WHEREFORE**, Trustee respectfully requests that the Court approve the sale of the Property to the Buyer on the terms set forth in **Exhibit A** attached hereto.

RESPECTFULLY SUBMITTED: November 13, 2020

**GUTTILLA MURPHY ANDERSON, P.C.**

*/s/ Dawn M. Maguire #20368*
Dawn M. Maguire
Attorneys for Chapter 7 Trustee

\\SERVER03\client\Mufic, Joseph Cair III and Mary Ellen Mufic\291-2001\Trustee Sale Documents\411785.docx

| | |
|---|---|
| 1 | **E-FILED** on November 13, 2020 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case. |
| 2 | |
| 3 | |
| 4 | **COPY** emailed the same date to: |
| 5 | Brian Mullen<br>*Chapter 7 Trustee* |
| 6 | BK Global<br>Attn: Patrick Butler<br>Attn: Laura Burton |
| 7 | |
| 8 | pbutler@bkginc.com<br>lbarton@bkginc.com |
| 9 | Heena Khatri<br>UrbanCiti Realty & Property Management |
| 10 | heena@urbanciti.com<br>*Agent for the Trustee* |
| 11 | |
| 12 | Tracy-Ann Chavarria<br>Branch Manager/Escrow Officer<br>American Title Service Agency, LLC |
| 13 | 7033 E. Greenway Parkway, Ste. 150<br>Scottsdale, AZ 85254 |
| 14 | tchavarria@atsaaz.com<br>*Title Company* |
| 15 | |
| 16 | Hugh Anderson<br>Anderson & Anderson Real Estate, LLC<br>15972 N. 115th Way |
| 17 | Scottsdale, AZ 85255<br>dhughanderson@gmail.com |
| 18 | *Agent for Buyer* |
| 19 | Robert Chang<br>2893 E. Scorpio Place |
| 20 | Chandler, AZ 85249<br>*Buyer* |
| 21 | |
| 22 | Nathan A Finch<br>CATALYST LEGAL GROUP PLLC<br>1820 E. Ray Road |
| 23 | Chandler, AZ 8522<br>Nathan@Catalyst.Lawyer |
| 24 | *Attorneys for Mary Ellen Mulac* |
| 25 | / / / |
| 26 | / / / |
| 27 | / / / |
| 28 | / / / |

| | |
|---|---|
| 1 | Robert D. Mitchell |
| | Christopher R. Kaup |
| 2 | Sarah K. Deutsch |
| | Zachary R. Cormier |
| 3 | TIFFANY & BOSCO, P.A. |
| | 2525 East Camelback Road, Suite 700 |
| 4 | Phoenix, Arizona 85016 |
| | rdm@tblaw.com |
| 5 | crk@tblaw.com |
| | skd@tblaw.com |
| 6 | zrc@tblaw.com |
| | *Attorneys for Creditor Larry Yount* |
| 7 | |
| | Dean M. Dinner |
| 8 | KUTAK ROCK LLP |
| | 8601 North Scottsdale Road, #300 |
| 9 | Scottsdale, AZ 85253-2738 |
| | dean.dinner@kutakrock.com |
| 10 | *Attorneys for CIT Bank, N.A.* |
| 11 | Jason P. Sherman |
| | JANEWAY LAW FIRM, LLC |
| 12 | 3636 N. Central Ave., Suite #400 |
| | Phoenix, AZ 85012 |
| 13 | jsherman@logs.com |
| | AZNotices@logs.com |
| 14 | *Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper* |
| 15 | Gerald L. Shelley |
| | Brett Gilmore |
| 16 | FENNEMORE CRAIG, P.C. |
| | 2394 E. Camelback Rd., Ste. 600 |
| 17 | Phoenix, AZ 85016-3429 |
| | gshelley@fclaw.com |
| 18 | bgilmore@fclaw.com |
| | *Attorneys for CSL Riverbend LLC* |
| 19 | |
| | Randy Nussbaum |
| 20 | SACKS TIERNEY P.A. |
| | 4250 N. Drinkwater Blvd., 4th Floor |
| 21 | Scottsdale, AZ 85251 |
| | Randy.Nussbaum@SacksTierney.com |
| 22 | *Attorneys for Darren Lee Sutton and R. Dean Harrell* |
| 23 | Tamalyn E. Lewis |
| | ENGELMAN BERGER, P.C. |
| 24 | 2800 North Central Avenue, Suite 1200 |
| | Phoenix, Arizona 85012 |
| 25 | tel@eblawyers.com |
| | *Attorneys for Robert J. Wade and Kathleen R. Wade as Trustees of The Wade Revocable Trust I* |
| 26 | |
| 27 | / / / |
| 28 | / / / |

\\SERVER03\client\Mulac, Joseph Carl, III and Mary Ellen\Mulac-291-2001\Trustee Sale Documents\411785.docx

Alan Baskin
BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
alan@baskin.law
*Attorneys for Carl Joseph Mulac III*

**COPY** mailed the same date via U.S. Mail to:

Office of the United States Trustee
230 N. First Ave., Suite 204
Phoenix, AZ 85003-1706

Carl Joseph Mulac III
Mary Ellen Mulac
4800 N. 68th Street, #371
Scottsdale, AZ 85251
*Debtors*

Edward J. Novak Jr.
Jodee K. Novak
46 Wellington Ct.
Yorktown Heights, NY 10598

Wells Fargo
PO Box 14591
Des Moines, IA 50306
*Lien Holder*

*/s/ Monica J. Baca*

\\SERVER03\client\Mulac, Joseph Carl III and Mary Ellen Mulac\291-7001\Trustee Sale Documents\411785.docx

# EXHIBIT A

DocuSign Envelope ID: 0EC6060C-44B2-4650-AE95-6CE8D063144A

# RESIDENTIAL RESALE REAL ESTATE
# PURCHASE CONTRACT



**ARIZONA**
association of
**REALTORS®**
REAL SOLUTIONS, REALTOR® SUCCESS

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.



## 1. PROPERTY

1a. 1. BUYER: Robert C. Chang
(BUYER'S NAME(S))
*Brian Millen the Trustee for Chapter 7 Bank mptcy estate of*
2. SELLER: See Line 545 *Joseph Mular and Mary Mular* or ☐ as identified in section 9c.
(SELLER'S NAME(S))
3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

1b. 5. Premises Address: 7411 E JACKRABBIT RD     Assessor's #: 173-16-046. Lot1
6. City: Scottsdale    County: Maricopa    AZ, Zip Code: 85250
7. Legal Description: LOT 1 BAXTER ACRES MCR 293-10 A, Maricopa County, Arizona
8.
9.

1c. 10. $   2,400,000.00 Full Purchase Price, paid as outlined below.
11. $   24,000.00 Earnest money
12. $
13. $
14.
15.
16.
17. Earnest Money is in the form of: ☐ Personal Check ☒ Wire Transfer ☐ Other _____
18. Upon acceptance of this offer, the Earnest Money, if any, will be deposited with: ☒ Escrow Company ☐ Broker's Trust Account.
19. IF THIS IS AN ALL CASH SALE: A Letter of Credit or a source of funds from a financial institution documenting the availability of
20. funds to close escrow is attached hereto.

1d. 21. Close of Escrow: Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
22. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all closing
23. documents, and perform all other acts necessary in sufficient time to allow COE to occur on
24. _____ ("COE Date"). If Escrow Company or recorder's office is closed on the COE Date,
    MONTH     DAY     YEAR
25. COE shall occur on the next day that both are open for business.

26. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
27. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds to
28. Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

29. Buyer acknowledges that failure to pay the required closing funds by the scheduled COE, if not cured after a cure notice is delivered
30. pursuant to Section 7a, shall be construed as a material breach of this Contract and the Earnest Money shall be subject to forfeiture.

31. All funds are to be in U.S. currency.

1e. 32. Possession: Seller shall deliver possession, occupancy, existing keys and/or means to operate all locks, mailbox, security
33. systems/alarms, and all common area facilities to Buyer at COE or ☐ _____
34. Broker(s) recommend that the parties seek independent counsel from insurance, legal, tax, and accounting professionals regarding
35. the risks of pre-possession or post-possession of the Premises.

1f. 36. Addenda Incorporated: ☐ Additional Clause ☐ Buyer Contingency ☐ Domestic Water Well ☐ H.O.A.
37. ☐ Lead-Based Paint Disclosure ☐ Loan Assumption ☐ On-site Wastewater Treatment Facility ☐ Seller Financing ☒ Short Sale
38. ☐ Solar Lease / Solar Loan Assumption Addendum ☐ Other: _____

Residential Resale Real Estate Purchase Contract • Updated: February 2020
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

BJM, T   >Initials     Initials>       Initials     Initials>
**SELLER**   **SELLER**          **BUYER**   **BUYER**

Anderson and Anderson Real Estate LLC 15272 N. 115th Way Scottsdale, AZ 85255     Untitled
Phone: 602-910-2489    Fax:    Hugh Anderson
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

*Residential Resale Real Estate Purchase Contract >>*

**1g. 39. Fixtures and Personal Property:** For purposes of this Contract, fixtures shall mean property attached/affixed to the Premises.
40. Seller agrees that all existing: fixtures on the Premises, personal property specified herein, and means to operate fixtures and
41. property (i.e.- remote controls) shall convey in this sale, including the following:

| | | |
|---|---|---|
| 42. • built-in appliances, ceiling fans and remotes | • media antennas/satellite dishes (affixed) | • storage sheds |
| 43. • central vacuum, hose, and attachments | • outdoor fountains and lighting | • storm windows and doors |
| 44. • draperies and other window coverings | • outdoor landscaping (i.e. – shrubbery, | • stoves: gas-log, pellet, wood-burning |
| 45. • fireplace equipment (affixed) | trees and unpotted plants) | • timers (affixed) |
| 46. • floor coverings (affixed) | • shutters and awnings | • towel, curtain and drapery rods |
| 47. • free-standing range/oven | • smart home devices, access to which | • wall mounted TV brackets and hardware |
| 48. • garage door openers and remotes | shall be transferred (i.e., video doorbell, | (excluding TVs) |
| 49. • light fixtures | automated thermostat) | • water-misting systems |
| 50. • mailbox | •speakers (flush-mounted) | • window and door screens, sun shades |

51. If owned by Seller, the following items also are included in this sale:

| | | |
|---|---|---|
| 52. • affixed alternate power systems serving | • in-ground pool and spa/hot tub equipment | • security and/or fire systems and/or alarms |
| 53. the Premises (i.e., solar) | and covers (including any mechanical or | • water purification systems |
| 54. | other cleaning systems) | • water softeners |

55. Additional existing personal property included in this sale (if checked):

56. ☒ refrigerator (description): **Sub Zero** _____

57. ☐ washer (description): _____

58. ☐ dryer (description): _____

59. ☐ above-ground spa/hot tub including equipment, covers, and any mechanical or other cleaning systems (description):

60. _____

61. ☐ other personal property not otherwise addressed (description): _____

62. ☐ other personal property not otherwise addressed (description): _____

63. Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no
64. monetary value, and free and clear of all liens or encumbrances.

65. Leased items shall NOT be included in this sale. Seller shall deliver notice of all leased items within three (3) days after Contract
66. acceptance. Buyer shall provide notice of any leased items disapproved within the Inspection Period or five (5) days after receipt of
67. the notice, whichever is later.

68. **IF THIS IS AN ALL CASH SALE:** Section 2 does not apply - go to Section 3.

## 2. FINANCING

**2a. 69. Pre-Qualification:** An AAR Pre-Qualification Form *is* attached hereto and incorporated herein by reference.

**2b. 70. Loan Contingency:** Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval without Prior to
71. Document ("PTD") conditions no later than three (3) days prior to the COE Date for the loan described in the AAR Loan Status
72. Update ("LSU") form or the AAR Pre-Qualification Form, whichever is delivered later. No later than three (3) days prior to the
73. COE Date, Buyer shall either: (i) sign all loan documents; or (ii) deliver to Seller or Escrow Company notice of loan
74. approval without PTD conditions AND date(s) of receipt of Closing Disclosure(s) from Lender; or (iii) deliver to Seller or
75. Escrow Company notice of inability to obtain loan approval without PTD conditions.

**2c. 76. Unfulfilled Loan Contingency:** This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
77. after diligent and good faith effort, Buyer is unable to obtain loan approval without PTD conditions and delivers notice of inability
78. to obtain loan approval no later than three (3) days prior to the COE Date. If Buyer fails to deliver such notice, Seller may issue a
79. cure notice to Buyer as required by Section 7a and, in the event of Buyer's breach, Seller shall be entitled to the Earnest Money
80. pursuant to Section 7b. If, prior to expiration of any Cure Period, Buyer delivers notice of inability to obtain loan approval, Buyer
81. shall be entitled to a return of the Earnest Money. Buyer acknowledges that prepaid items paid separately from the Earnest Money
82. are not refundable.

**2d. 83. Interest Rate / Necessary Funds:** Buyer agrees that (i) the inability to obtain loan approval due to the failure to lock the interest
84. rate and "points" by separate written agreement with the lender; or (ii) the failure to have the down payment or other funds
85. due from Buyer necessary to obtain the loan approval without conditions and close this transaction is not an unfulfilled loan
86. contingency.

**2e. 87. Loan Status Update:** Buyer shall deliver to Seller the LSU, with at a minimum lines 1-40 completed, describing the current status
88. of the Buyer's proposed loan within ten (10) days after Contract acceptance and instruct lender to provide an updated LSU to
89. Broker(s) and Seller upon request.

>>

Residential Resale Real Estate Purchase Contract • Updated: February 2020
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

Page 2 of 10

| [G.JM.T] | Initials | | [AC] | | |
|---|---|---|---|---|---|
| SELLER | SELLER | | BUYER | BUYER | |

Case 2:20-bk-04173-BKM   Doc 196   Filed 11/13/20   Entered 11/13/20 11:03:26   Desc
Main Document   Page 13 of 36

*Residential Resale Real Estate Purchase Contract >>*

2f. 90. **Loan Application:** Unless previously completed, within three (3) days after Contract acceptance Buyer shall (i) provide lender
91. with Buyer's name, income, social security number, Premises address, estimate of value of the Premises, and mortgage loan
92. amount sought; and (ii) grant lender permission to access Buyer's Trimerged Residential Credit Report.

2g. 93. **Loan Processing During Escrow:** Within ten (10) days after receipt of the Loan Estimate Buyer shall (i) provide lender with
94. notice of intent to proceed with the loan transaction in a manner satisfactory to lender; and (ii) provide to lender all requested
95. signed disclosures and the documentation listed in the LSU at lines 32-35. Buyer agrees to diligently work to obtain the loan and
96. will promptly provide the lender with all additional documentation requested.

2h. 97. **Type of Financing:** ☒ Conventional ☐ FHA ☐ VA ☐ USDA ☐ Assumption ☐ Seller Carryback ☐ _____
98. (If financing is to be other than new financing, see attached addendum.)

2i. 99. **Loan Costs:** All costs of obtaining the loan shall be paid by Buyer, unless otherwise provided for herein.

2j. 100. **Seller Concessions (if any):** In addition to the other costs Seller has agreed to pay herein, Seller will credit Buyer _____%
101. of the Purchase Price OR $ _____ (Seller Concessions). The Seller Concessions may be used for any Buyer fee, cost, charge,
102. or expenditure to the extent allowed by Buyer's lender.

2k. 103. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in the
104. Pre-Qualification Form attached hereto or LSU provided within ten (10) days after Contract acceptance and shall only make any
105. such changes without the prior written consent of Seller if such changes do not adversely affect Buyer's ability to obtain loan
106. approval without PTD conditions, increase Seller's closing costs, or delay COE.

2l. 107. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises acceptable to
108. lender for at least the purchase price. If the Premises fail to appraise for the purchase price in any appraisal required by lender,
109. Buyer has five (5) days after notice of the appraised value to cancel this Contract and receive a refund of the Earnest Money or
110. the appraisal contingency shall be waived, unless otherwise prohibited by federal law.

2m. 111. **Appraisal Cost(s):** Initial appraisal fee shall be paid by ☒ Buyer ☐ Seller ☐ Other _____
112. at the time payment is required by lender and is non-refundable. If Seller is paying the initial appraisal fee, the fee ☐ will ☐ will not
113. be applied against Seller's Concessions at COE, if applicable. If Buyer's lender requires an updated appraisal prior to COE, it will be
114. performed at Buyer's expense. Any appraiser/lender required inspection cost(s) shall be paid for by Buyer.

## 3. TITLE AND ESCROW

3a. 115. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
116. terms of this Contract shall be:

117. American Title Service Agency, LLC                    Jill Hoover-Russell
ESCROW/TITLE COMPANY

118. 2929 E. Camelback Road Suite 204          Phoenix                    AZ      85016
ADDRESS                                     CITY                       STATE   ZIP

119. jhoover@ATSAAZ.com                       (602) 424-7300            (602) 424-7301
EMAIL                                       PHONE                      FAX

3b. 120. **Title and Vesting:** Buyer will take title as determined before COE. If Buyer is married and intends to take title as his/her sole
121. and separate property, a disclaimer deed may be required. Taking title may have significant legal, estate planning and tax
122. consequences. Buyer should obtain independent legal and tax advice.

3c. 123. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller directly,
124. addressed pursuant to 8s and 9c or as otherwise provided, a Commitment for Title Insurance together with complete and legible copies
125. of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title Commitment"), including but not limited to
126. Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and easements. Buyer shall have five (5) days after receipt of the
127. Title Commitment and after receipt of notice of any subsequent exceptions to provide notice to Seller of any items disapproved. Seller
128. shall convey title by warranty deed, subject to existing taxes, assessments, covenants, conditions, restrictions, rights of way, easements
129. and all other matters of record. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's
130. Title Insurance Policy or, if not available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire
131. extended coverage at Buyer's own additional expense. If applicable, Buyer shall pay the cost of obtaining the ALTA Lender Title
132. Insurance Policy.

*Residential Resale Real Estate Purchase Contract • Updated: February 2020*
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

| SSM, T | | ‹Initials› | Initials› | RG | |
|--------|--------|---------|---------|-------|-------|
| SELLER | SELLER | | | BUYER | BUYER |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com       Untitled

DocuSign Envelope ID: 0EC6050C-44B2-4650-AE95-6CE6D063144A

*Residential Resale Real Estate Purchase Contract >>*

**3d. 133. Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and address of
134. Buyer to any homeowner's association(s) in which the Premises are located, (ii) If Escrow Company is also acting as the title agency
135. but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to Buyer and Seller, upon deposit of funds, a
136. closing protection letter from the title insurer indemnifying Buyer and Seller for any losses due to fraudulent acts or breach of escrow
137. instructions by Escrow Company. (iii) All documents necessary to close this transaction shall be executed promptly by Seller and
138. Buyer in the standard form used by Escrow Company. Escrow Company shall modify such documents to the extent necessary to be
139. consistent with this Contract. (iv) Escrow Company fees, unless otherwise stated herein, shall be allocated equally between Seller and
140. Buyer. (v) Escrow Company shall send to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer
141. and Broker(s). (vi) Escrow Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii)
142. If an Affidavit of Disclosure is provided, Escrow Company shall record the Affidavit at COE.

**3e. 143. Tax Prorations:** Real property taxes payable by Seller shall be prorated to COE based upon the latest tax information available.

**3f. 144. Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with
145. Escrow Company, Buyer and Seller authorize Escrow Company to release the Earnest Money pursuant to the terms and conditions
146. of this Contract in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against
147. any claim, action or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or
148. relating in any way to the release of Earnest Money.

**3g. 149. Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of COE, including homeowner's
150. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on encumbrances,
151. and service contracts, shall be prorated as of COE or ☐ Other: _____

**3h. 152. Assessment Liens:** The amount of any assessment lien or bond including those charged by a special taxing district, such as a
153. Community Facilities District, shall be prorated as of COE.

# 4. DISCLOSURE

**4a. 154. Seller's Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR Residential SPDS form to Buyer
155. within three (3) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection
156. Period or five (5) days after receipt of the SPDS, whichever is later.

**4b. 157. Insurance Claims History:** Seller shall deliver to Buyer a written five (5) year insurance claims history regarding the Premises (or a
158. claims history for the length of time Seller has owned the Premises if less than five (5) years) from Seller's insurance company or an
159. insurance support organization or consumer reporting agency, or if unavailable from these sources, from Seller, within five (5) days
160. after Contract acceptance. Buyer shall provide notice of any items disapproved within the Inspection Period or five (5) days after
161. receipt of the claims history, whichever is later.

**4c. 162. Foreign Sellers:** The Foreign Investment in Real Property Tax Act ("FIRPTA") is applicable if Seller is a non-resident alien
163. individual, foreign corporation, foreign partnership, foreign trust, or foreign estate ("Foreign Person"). Seller agrees to complete,
164. sign, and deliver to Escrow Company a certificate indicating whether Seller is a Foreign Person. FIRPTA requires that a foreign
165. seller may have federal income taxes up to 15% of the purchase price withheld, unless an exception applies. Seller is responsible
166. for obtaining independent legal and tax advice.

**4d. 167. Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, Seller shall: (i) notify Buyer of any known lead-based paint
168. ("LBP") or LBP hazards in the Premises; (ii) provide Buyer with any LBP risk assessments or inspections of the Premises in Seller's
169. possession; (iii) provide Buyer with the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, and any
170. report, records, pamphlets, and/or other materials referenced therein, including the pamphlet "Protect Your Family from Lead in Your
171. Home" (collectively "LBP Information"). Buyer shall return a signed copy of the Disclosure of Information on Lead-Based Paint and
172. Lead-Based Paint Hazards to Seller prior to COE.

173. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
174. assessments or inspections during Inspection Period.

175. ☐ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days
176. or _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for the
177. presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP Information or five
178. (5) days after expiration of the Assessment Period cancel this Contract.

179. Buyer is further advised to use certified contractors to perform renovation, repair or painting projects that disturb lead-based paint in
180. residential properties built before 1978 and to follow specific work practices to prevent lead contamination.

181.     If Premises were constructed prior to 1978, (BUYER'S INITIALS REQUIRED)

182.     If Premises were constructed in 1978 or later, (BUYER'S INITIALS REQUIRED)

*Residential Resale Real Estate Purchase Contract • Updated: February 2020*
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.
Page 4 of 10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

SELLER | SELLER    BUYER | BUYER   Untitled

*Residential Resale Real Estate Purchase Contract >>*

4e. 183. **Affidavit of Disclosure:** If the Premises are located in an unincorporated area of the county, and five (5) or fewer parcels of
184. property other than subdivided property are being transferred, Seller shall deliver a completed Affidavit of Disclosure in the form
185. required by law to Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit of Disclosure Items
186. disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure, whichever is later.

4f. 187. **Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made herein,
188. in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already obligated by this
189. Contract or any amendments hereto, to correct or repair the changed item disclosed, Buyer shall be allowed five (5) days after
190. delivery of such notice to provide notice of disapproval to Seller.

# 5. WARRANTIES

5a. 191. **Condition of Premises:** BUYER AND SELLER AGREE THE PREMISES ARE BEING SOLD IN ITS PRESENT PHYSICAL
192. CONDITION AS OF THE DATE OF CONTRACT ACCEPTANCE. Seller makes no warranty to Buyer, either express or implied, as
193. to the condition, zoning, or fitness for any particular use or purpose of the Premises. However, Seller shall maintain and repair the
194. Premises so that at the earlier of possession or COE: (i) the Premises, including all personal property included in the sale, will be in
195. substantially the same condition as on the date of Contract acceptance; and (ii) all personal property not included in the sale and
196. debris will be removed from the Premises. Buyer is advised to conduct independent inspections and investigations regarding the
197. Premises within the Inspection Period as specified in Section 6a. Buyer and Seller acknowledge and understand they may, but are
198. not obligated to, engage in negotiations for repairs/improvements to the Premises. Any/all agreed upon repairs/improvements will be
199. addressed pursuant to Section 6j.

5b. 200. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects and
201. any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely affect the
202. consideration to be paid by Buyer. Prior to COE, Seller warrants that payment in full will have been made for all labor, professional
203. services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding COE in connection with the
204. construction, alteration, or repair of any structure on or improvement to the Premises. Seller warrants that the information regarding
205. connection to a sewer system or on-site wastewater treatment facility (conventional septic or alternative) is correct to the best of
206. Seller's knowledge.

5c. 207. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
208. Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or COE,
209. Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts the Premises.
210. Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises except disclosed as follows:
211. _____
212. _____

# 6. DUE DILIGENCE

6a. 213. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____ days after Contract acceptance. During the
214. Inspection Period Buyer, at Buyer's expense, shall: (i) conduct all desired physical, environmental, and other types of inspections
215. and investigations to determine the value and condition of the Premises; (ii) make inquiries and consult government agencies,
216. lenders, insurance agents, architects, and other appropriate persons and entities concerning the suitability of the Premises and
217. the surrounding area; (iii) investigate applicable building, zoning, fire, health, and safety codes to determine any potential hazards,
218. violations or defects in the Premises; and (iv) verify any material multiple listing service ("MLS") information. If the presence of
219. sex offenders in the vicinity or the occurrence of a disease, natural death, suicide, homicide or other crime on or in the vicinity is
220. a material matter to Buyer, it must be investigated by Buyer during the Inspection Period. Buyer shall keep the Premises free and
221. clear of liens, shall indemnify and hold Seller harmless from all liability, claims, demands, damages, and costs, and shall repair all
222. damages arising from the inspections. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection
223. reports concerning the Premises obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer*
224. *Advisory* to assist in Buyer's due diligence inspections and investigations.

6b. 225. **Square Footage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH THE
226. REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL
227. MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.

6c. 228. **Wood-Destroying Organism or Insect Inspection:** IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR INSECTS
229. (SUCH AS TERMITES) ARE A MATERIAL MATTER TO BUYER, THESE ISSUES MUST BE INVESTIGATED DURING THE
230. INSPECTION PERIOD. Buyer shall order and pay for all wood-destroying organism or insect inspections performed during the
231. Inspection Period. If the lender requires an updated Wood-Destroying Organism or Insect Inspection Report prior to COE, it will be
232. performed at Buyer's expense.

6d. 233. **Flood Hazard:** FLOOD HAZARD DESIGNATIONS OR THE COST OF FLOOD HAZARD INSURANCE SHALL BE
234. DETERMINED BY BUYER DURING THE INSPECTION PERIOD. If the Premises are situated in an area identified as having
235. any special flood hazards by any governmental entity, THE LENDER MAY REQUIRE THE PURCHASE OF FLOOD HAZARD
236. INSURANCE. Special flood hazards may also affect the ability to encumber or improve the Premises.

>>

*Residential Resale Real Estate Purchase Contract* • Updated: February 2020
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

**6e. 237. Insurance: IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO BUYER, BUYER SHALL APPLY FOR AND**
238. **OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR THE**
239. **PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD.** Buyer understands that any
240. homeowner's, fire, casualty, flood or other insurance desired by Buyer or required by lender should be in place at COE.

**6f. 241. Sewer or On-site Wastewater Treatment System: The Premises are connected to a:**

242. ☐ sewer system   ☒ conventional septic system   ☐ alternative system

243. **IF A SEWER CONNECTION IS A MATERIAL MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION**
244. **PERIOD.** If the Premises are served by a conventional septic or alternative system, the AAR On-site Wastewater Treatment Facility
245. Addendum is incorporated herein by reference.

246. **(BUYER'S INITIALS REQUIRED)** [RC]

BUYER          BUYER

**6g. 247. Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state, county, and
248. municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance with said regulations prior to
249. occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming Pool, Buyer acknowledges receipt
250. of the Arizona Department of Health Services approved private pool safety notice.

251. **(BUYER'S INITIALS REQUIRED)** [RC]

BUYER          BUYER

**6h. 252. BUYER ACKNOWLEDGMENT: BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT**
253. **QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE SURROUNDING**
254. **AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO ASSIST IN BUYER'S**
255. **DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE PREMISES AND THE**
256. **SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKER'S EXPERTISE AND LICENSING, BUYER EXPRESSLY**
257. **RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY DEFECTS OR CONDITIONS THAT COULD**
258. **HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.**

259. **(BUYER'S INITIALS REQUIRED)** [RC]

BUYER          BUYER

**6i. 260. Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any items
261. disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall conduct all
262. desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items disapproved shall be
263. provided in a single notice.

**6j. 264. Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller a
265. signed notice of the items disapproved and state in the notice that Buyer elects to either:
266. **(1) Immediately cancel this Contract,** in which case:
267. (a) If Buyer's notice specifies disapproval of items as allowed herein, the Earnest Money shall be released to Buyer.
268. (b) If Buyer's notice fails to specify items disapproved as allowed herein, the cancellation will remain in effect but Buyer has
269. failed to comply with a provision of this Contract and Seller may deliver to Buyer a cure notice as required by Section 7a.
270. If Buyer fails to cure their non-compliance within three (3) days after delivery of such notice, Buyer shall be in breach and
271. Seller shall be entitled to the Earnest Money. If, prior to expiration of the Cure Period, Buyer delivers notice specifying
272. items disapproved as allowed herein, Buyer shall be entitled to a return of the Earnest Money.

273. **OR**

274. **(2) Provide Seller an opportunity to correct the items disapproved,** in which case:
275. (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of items
276. disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall conclusively be deemed
277. Seller's refusal to correct any of the items disapproved.
278. (b) If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any repairs in a
279. workmanlike manner and deliver any paid receipts evidencing the corrections and repairs to Buyer three (3) days
280. or _____ days prior to COE Date.
281. (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this Contract within five (5) days
282. after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs first, and the
283. Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as provided,
284. Buyer shall close escrow without correction of those items that Seller has not agreed in writing to correct.

285. **VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS.** Only a written agreement signed by both parties will extend
286. response times or cancellation rights.

287. **BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN**
288. **THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE**
289. **TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.**          **>>**

*Residential Resale Real Estate Purchase Contract • Updated: February 2020*
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

[BJSM JT]
SELLER     SELLER      <Initials

Initials>     [RC]
BUYER     BUYER

*Residential Resale Real Estate Purchase Contract >>*

6k. 290. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase. The
291. parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service fees and
292. most plans exclude pre-existing conditions.

293. ☐ A Home Warranty Plan will be ordered by ☐ Buyer or ☐ Seller with the following optional coverage _____ at a cost
294. _____, to be issued by _____
295. not to exceed $ _____, to be paid for by ☐ Buyer ☐ Seller ☐ Split evenly between Buyer and Seller
296. ☐ Buyer declines the purchase of a Home Warranty Plan.
297.

**(BUYER'S INITIALS REQUIRED)** *RC*
BUYER  BUYER

6l. 298. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for
299. the purpose of satisfying Buyer that any corrections or repairs agreed to by Seller have been completed, and the Premises are
300. in substantially the same condition as of the date of Contract acceptance. If Buyer does not conduct such walkthrough(s), Buyer
301. releases Seller and Broker(s) from liability for any defects that could have been discovered.

6m. 302. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all inspections
303. and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on, including any propane,
304. until COE to enable Buyer to conduct these inspections and walkthrough(s).

6n. 305. **IRS and FIRPTA Reporting:** The Foreign Investment in Real Property Tax Act ("FIRPTA") provides that, if a seller is a Foreign
306. Person, a buyer of residential real property must withhold federal income taxes up to 15% of the purchase price, unless an exception
307. applies. If FIRPTA is applicable and Buyer fails to withhold, Buyer may be held liable for the tax. Buyer agrees to perform any acts
308. reasonable or necessary to comply with FIRPTA and IRS reporting requirements and Buyer is responsible for obtaining independent
309. legal and tax advice.

## 7. REMEDIES

7a. 310. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
311. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the
312. non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall become a
313. breach of Contract. If Escrow Company or recorder's office is closed on the last day of the Cure Period, and COE must occur
314. to cure a potential breach, COE shall occur on the next day that both are open for business.

7b. 315. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
316. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative Dispute
317. Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages in the event of
318. Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at Seller's option, accept
319. the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from Buyer's failure to deliver the
320. notice required by Section 2b, or Buyer's inability to obtain loan approval due to the waiver of the appraisal contingency pursuant
321. to Section 2i, Seller shall exercise this option and accept the Earnest Money as Seller's sole right to damages. An unfulfilled
322. contingency is not a breach of Contract. The parties expressly agree that the failure of any party to comply with the terms and
323. conditions of Section 1d to allow COE to occur on the COE Date, if not cured after a cure notice is delivered pursuant to Section 7a,
324. will constitute a material breach of this Contract, rendering the Contract subject to cancellation.

7c. 325. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating to this
326. Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs shall be paid
327. equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved disputes or claims shall
328. be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and cooperate in the scheduling of
329. an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be submitted to the American Arbitration
330. Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate Industry. The decision of the arbitrator shall be
331. final and nonappealable. Judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.
332. Notwithstanding the foregoing, either party may opt out of binding arbitration within thirty (30) days after the conclusion of this
333. mediation conference by notice to the other and, in such event, either party shall have the right to resort to court action.

7d. 334. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought in the
335. Small Claims Division of an Arizona Justice Court (up to $3,500) so long as the matter is not thereafter transferred or removed from
336. the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or
337. agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's lien; or (v) any matter that
338. is within the jurisdiction of a probate court. Further, the filing of a judicial action to enable the recording of a notice of pending action
339. ("lis pendens"), or order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the
340. obligation to submit the claim to ADR, nor shall such action constitute a breach of the duty to mediate or arbitrate.

7e. 341. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to this
342. Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney fees, expert
343. witness fees, fees paid to investigators, and arbitration costs.

>>

*Residential Resale Real Estate Purchase Contract • Updated: February 2020*
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

| BSM, T | | | | | | RC | |
|---|---|---|---|---|---|---|---|
| SELLER | SELLER | <Initials | | Initials> | | BUYER | BUYER |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Untitled

Case 2:20-bk-04173-BKM   Doc 196   Filed 11/13/20   Entered 11/13/20 11:03:26   Desc
Main Document   Page 18 of 36

DocuSign Envelope ID: 0EC6050C-44B2-4650-AE95-6CE8D063144A

_Residential Resale Real Estate Purchase Contract >>_

## 8. ADDITIONAL TERMS AND CONDITIONS

8a. 344. _____
345. <u>Line2 Seller Name to be:</u>
346. <u>Brian Mullen, BK Trustee for the estate of Joseph and Mary Mulac</u>
347. _____
348. _____
349. <u>Line24- COE will be on or before 21 days from BK court Approval</u>
350. _____
351. _____
352. _____
353. _____
354. _____
355. _____
356. _____
357. _____
358. _____
359. _____
360. _____
361. _____
362. _____
363. _____
364. _____
365. _____
366. _____
367. _____
368. _____
369. _____
370. _____
371. _____
372. _____
373. _____
374. _____
375. _____
376. _____
377. _____
378. _____
379. _____
380. _____
381. _____
382. _____
383. _____
384. _____
385. _____
386. _____
387. _____
388. _____
389. _____

>>

Residential Resale Real Estate Purchase Contract • Updated: February 2020
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

&lt;Initials

**SELLER    SELLER**

Page 8 of 10

Initials>

**BUYER    BUYER**

Untitled

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**Residential Resale Real Estate Purchase Contract >>**

8b. 390. **Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or possession,
391. whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on Seller, provided,
392. however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase price, either Seller or
393. Buyer may elect to cancel the Contract.

8c. 394. **Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

8d. 395. **Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

8e. 396. **Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations described
397. herein.

8f. 398. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
399. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
400. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
401. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
402. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
403. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN BROKER AND CLIENT.

8g. 404. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract.
405. This Contract and any other documents required by this Contract may be executed by facsimile or other electronic means and in any
406. number of counterparts, which shall become effective upon delivery as provided for herein, except that the Disclosure of Information
407. on Lead-Based Paint and Lead-Based Paint Hazards may not be signed in counterpart. All counterparts shall be deemed to
408. constitute one instrument, and each counterpart shall be deemed an original.

8h. 409. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and
410. end at 11:59 p.m.

8i. 411. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event from
412. which the time period begins to run is not included and the last day of the time period is included. Contract acceptance occurs on the
413. date that the signed Contract (and any incorporated counter offer) is delivered to and received by the appropriate Broker. Acts that
414. must be performed three (3) days prior to the COE Date must be performed three (3) full days prior (i.e. – if the COE Date is Friday
415. the act must be performed by 11:59 p.m. on Monday).

8j. 416. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
417. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing signed
418. by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

8k. 419. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
420. any subsequent offer accepted by Seller must be a backup offer contingent on the cancellation of this Contract.

8l. 421. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by delivering
422. notice stating the reason for cancellation to the other party or to Escrow Company. Cancellation shall become effective immediately
423. upon delivery of the cancellation notice.

8m. 424. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in writing
425. and deemed delivered and received when: (i) hand-delivered; (ii) sent via facsimile transmission; (iii) sent via electronic mail, if email
426. addresses are provided herein; or (iv) sent by recognized overnight courier service, and addressed to Buyer as indicated in
427. Section 8q, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

8n. 428. **Release of Broker(s):** Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this
429. transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,
430. boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,
431. governmental regulations, insurance, price and terms of sale, return on investment or any other matter relating to the value
432. or condition of the Premises. The parties understand and agree that the Broker(s) do not provide advice on property as an
433. investment and are not qualified to provide financial, legal, or tax advice regarding this real estate transaction.

434. **(SELLER'S INITIALS REQUIRED)** BJM, T _____ **(BUYER'S INITIALS REQUIRED)** RC _____
SELLER    SELLER                                                BUYER    BUYER

8o. 435. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and a signed copy delivered
436. in person, by mail, facsimile or electronically, and received by Broker named in Section 8q
437. by __October 8__, 2020 at __5__ ☐ a.m./☒ p.m., Mountain Standard Time.
438. Buyer may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
439. date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

8p. 440. THIS CONTRACT CONTAINS TEN (10) PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE
441. THAT YOU HAVE RECEIVED AND READ ALL TEN (10) PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND
442. ATTACHMENTS.

>>

Residential Resale Real Estate Purchase Contract • Updated: February 2020
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

BJM,T <Initials    Initials> RC

SELLER SELLER                    BUYER BUYER

Page 9 of 10                                              Untitled

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 2:20-bk-04173-BKM    Doc 196    Filed 11/13/20    Entered 11/13/20 11:03:26    Desc
Main Document    Page 20 of 36

DocuSign Envelope ID: 05C005UC-44B2-4850-AE05-6CEBDDG3144A

**8q.** 443. Broker on behalf of Buyer:

444. **Hugh Anderson**          HAG14          BR012206000
PRINT AGENT'S NAME          AGENT MLS CODE          AGENT STATE LICENSE NO.

445. _____          AGENT MLS CODE          AGENT STATE LICENSE NO.
PRINT AGENT'S NAME

446. **Anderson & Anderson Real Estate, LLC**          AARE01
PRINT FIRM NAME          FIRM MLS CODE

447. **15972 N. 115th Way          Scottsdale          AZ  85255          LC555156000**
FIRM ADDRESS          STATE  ZIP CODE          FIRM STATE LICENSE NO.

448. **(602) 910-2400          DHUGHANDERSON@GMAIL.COM**
PREFERRED TELEPHONE     FAX          EMAIL

**8r.** 449. Agency Confirmation: Broker named in Section 8q above is the agent of (check one):

450. ☒ Buyer; ☐ Seller; or ☐ both Buyer and Seller

**8s.** 451. The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of
462. a copy hereof including the Buyer Attachment.

453. *Robert Chang*          10/1/2020
^BUYER'S SIGNATURE          MO/DA/YR          ^BUYER'S SIGNATURE          MO/DA/YR

454. **Robert C. Chang**          ^BUYER'S NAME PRINTED
^BUYER'S NAME PRINTED

455. **2893 E. Scorpio Place**          _____
ADDRESS          ADDRESS

456. **Chandler, AZ 85249**          _____
CITY, STATE, ZIP CODE          CITY, STATE, ZIP CODE

## 9. SELLER ACCEPTANCE

**9a.** 457. Broker on behalf of Seller:

458. **Heena Khatri**          HK039          BK570341000
PRINT AGENT'S NAME          AGENT MLS CODE          AGENT STATE LICENSE NO.

459. _____          AGENT MLS CODE          AGENT STATE LICENSE NO.
PRINT AGENT'S NAME          ALCR01

460. **Urbanciti Realty**          ALCR01
PRINT FIRM NAME          FIRM MLS CODE

461. **4400 N. Scottdale Rd. #9270  Scottsdale          AZ  85251          LC327426000**
FIRM ADDRESS          STATE  ZIP CODE          FIRM STATE LICENSE NO.

462. **(480) 993 0901          FAX          heena @ Urbanciti.com**
PREFERRED TELEPHONE          EMAIL

**9b.** 463. Agency Confirmation: Broker named in Section 9a above is the agent of (check one):

464. ☒ Seller; or ☐ both Buyer and Seller

**9c.** 465. The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
466. copy hereof and grant permission to Broker named in Section 9a to deliver a copy to Buyer.

467. ☐ Counter Offer is attached, and is incorporated herein by reference. Seller must sign and deliver both this offer and the Counter
468. Offer. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

469. *Brian J. Mullen, Trustee* 10/8/2020
^SELLER'S SIGNATURE          MO/DA/YR          SELLER'S SIGNATURE          MO/DA/YR

470. for Chapter 7 Bankruptcy
^SELLER'S NAME PRINTED          ^SELLER'S NAME PRINTED

471. estate of Joseph Mulac and
ADDRESS          ADDRESS

472. Mary Mulac
CITY, STATE, ZIP CODE          CITY, STATE, ZIP CODE

*[handwritten left margin: BC X BJM,T]*

473. ☐ OFFER REJECTED BY SELLER:          _____
MONTH     DAY     YEAR          SELLER'S INITIALS

For Broker Use Only:
Brokerage File/Log No. **L2020Sw91R** Manager's Initials ___ Broker's Initials **JH** Date **10/07/20**
MO/DA/YR

Residential Resale Real Estate Purchase Contract • Updated: February 2020
Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

Page 10 of 10

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Untitled

Docusign Envelope ID: 4C1D2413-0714-4687-8547-A461AA227873

Anderson and Anderson Real Estate LLC

# ADDENDUM #1



ARIZONA
REALTORS®
REAL SOLUTIONS, REALTORS SUCCESS

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

Document updated:
June 1993

 

1. This is an addendum originated by the: ☐ Seller ☒ Buyer ☐ Landlord ☐ Tenant.

2. This is an addendum to the Contract dated ___October 1, 2020___ between the following Parties:
   MO/DA/YR

3. Seller/Landlord: ~~Ron Linacre~~ Brian Mullen the Trustee for Chapter 7 Bankruptcy estate

4. Buyer/Tenant: Robert O. Chang   of Joseph Mullen and Mary Mullen

5. Premises: 7411 E JACKRABBIT RD, Scottsdale, 85250

6. The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the above referenced Premises;

7. **Line#10 Purchase price to be $2,500,000.00**

8. **Line#11 to be $25,000.00**

9. 

10. **The buyer will pay a $30K buyer premium in addition to the purchase price on this**

11. **Addendum #1: Line#7**

12.–41. _(blank lines)_

42. The undersigned agrees to the additional terms and conditions and acknowledges receipt of a copy hereof.

43. Robert Chang                      10/4/2020

44. ☒ Buyer        MO/DA/YR          ☐ Seller    ☐ Buyer        MO/DA/YR
45. ☐ Landlord  ☐ Tenant                          ☐ Landlord  ☐ Tenant

46. Brian J Mullen, Trustee    10/8/2020

47. ☒ Seller     ☐ Buyer    MO/DA/YR          ☐ Seller    ☐ Buyer        MO/DA/YR
48. ☐ Landlord  ☐ Tenant                          ☐ Landlord  ☐ Tenant

49. For Broker Use Only:
    Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____
                                                                                                MO/DA/YR

Addendum • Updated June 1993 • Copyright © 1993 Arizona Association of REALTORS®. All rights reserved.

Anderson and Anderson Real Estate LLC 15092 N. 115th Way Scottsdale, AZ 85255
Phone: 602-910-2400     Fax:     Hugh Anderson     Untitled
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 5BEAADA2-80BA-40CB-9ED9-A9CE081083FF

UrbanCiti Realty

# ADDENDUM ___2___

Document updated:
**June 1993**



ARIZONA
*association of*
**REALTORS***
© REAL SOLUTIONS. REALTOR® SUCCESS

*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*



1. This is an addendum originated by the: ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant.
2. This is an addendum to the Contract dated _____ October 1, 2020 _____ between the following Parties:
   MO/DA/YR
3. Seller/Landlord: Brian Mullen, BK Trustee for the , estate of Joseph & Mary Mulac
4. Buyer/Tenant: Robert C. Chang
5. Premises: 7411 E Jackrabbit Rd, Scottsdale, AZ 85250-6467
6. The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the above referenced Premises:
7. Escrow is open with:
8. _____
9. Tracy-Ann Chavarria
10. Branch Manager/Escrow Officer
11. American Title Service Agency, LLC
12. 7033 E. Greenway Parkway, Suite 150, Scottsdale, AZ 85254
13. Office: 480-365-7222
14. Direct: 602-424-7366
15. E-Fax: 602-424-7367
16. E-Mail Address: tchavarria@atsaaz.com
17. _____
18. Valinda Evans
19. Assistant Escrow Officer for Tracy-Ann Chavarria
20. Direct: 602-424-7304
21. E-Mail Address: vevans@atsaaz.com
22. _____
23. All other terms and conditions to remain the same as original offer and addenda.
24. _____
25. _____
26. _____
27. _____
28. _____
29. _____
30. _____
31. _____
32. _____
33. _____
34. _____
35. _____
36. _____
37. _____
38. _____
39. _____
40. _____
41. _____
42. The undersigned agrees to the additional terms and conditions and acknowledges receipt of a copy hereof.

43. *Brian J Mullen, Trustee* 10/12/2022          *Robert Chang*          10/9/2020
    MO/DA/YR                    MO/DA/YR

44. ☒ Seller  ☐ Buyer          MO/DA/YR          ☐ Seller  ☒ Buyer          MO/DA/YR
45. ☐ Landlord  ☐ Tenant                          ☐ Landlord  ☐ Tenant

46. _____

47. ☐ Seller  ☐ Buyer          MO/DA/YR          ☐ Seller  ☐ Buyer          MO/DA/YR
48. ☐ Landlord  ☐ Tenant                          ☐ Landlord  ☐ Tenant

49. | For Broker Use Only: |
    Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
    MO/DA/YR

Addendum • Updated: June 1993 • Copyright © 1993 Arizona Association of REALTORS®. All rights reserved.

UrbanCiti Realty, 4400 N Scottsdale Rd #9270 Scottsdale AZ 85251
Phone: (480) 993-0901          Fax: (866) 889-7043          Heena Khatri, Broker, GRI          7411 E Jackrabbit
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



# BANKRUPTCY ADDENDUM A

A.1. This is an addendum originated by the: ☑ Seller ☐ Buyer(s) ☐ Landlord ☐ Tenant

A.2. This is an Addendum to the Contract dated October 4, 2020 between the following Parties:

A.3. Seller: Chapter 7 Trustee, Brian Mullen, for the bankruptcy estate Joseph Carl Mulac and Mary Ellen Mulac, Case No. 2:20-bk-04173-BKM

A.4. Buyers: Robert C. Chang ("Buyer")

A.5. Premises: 7411 E. Jackrabbit Rd., Scottsdale, AZ 85250 ("Property")

A.6. The following additional terms and conditions are hereby included as a part of the Contract described above.

A.7. All parties understand that the above-mentioned property is involved in a Bankruptcy, Case No. 2:20-bk-04173-BKM.

A.8. Buyer understands that this offer requires U.S. Bankruptcy Court approval for this transaction to be completed.

A.9. There are no warranties or guarantees on this property. There is no Seller Property Disclosure Statement available. There will be NO REPAIRS done to the property. Property to be sold "AS IS, WHERE IS."

A.10. Paragraph 3c. - lines 127-128 is revised to reflect that a Bankruptcy Trustee's Deed will be used to convey title to Buyers, not a Warranty Deed.

A.11. Paragraph 3f, lines 144-148 is deleted in its entirety. Buyers understand that this offer is subject to higher and better offers, per Bankruptcy Court rules and law, up until final Court approval. At the hearing, the Judge will ask if anyone present is willing to bid any amount higher or better than the proposed contract. If other bidders appear, the Buyers would have the opportunity to increase their bid. The Court will sell the property to the highest and best bid at the hearing. If the Buyers are not highest bidder, the Earnest Money will be returned. After Court Sale hearing approval, the successful Buyers' Earnest Money is non-refundable.

A.12. Paragraphs 4a., 4b., 4c. and 4d. - lines 154 through 182 are deleted in their entirety.

A.13. Per Paragraph 6 – Due Diligence: Inspections are for information purposes only. The Trustee does not make repairs.

A.14. The Bankruptcy Court, for the District of Arizona, retains full control and jurisdiction over all matters pertaining to the real property and this Contract, and any and all disputes will be set before the Bankruptcy Court. Paragraphs 7c - 7e, lines 325 through 343 are deleted in their entirety.

A.15. Buyer confirms that he has no relation to the Debtors.

**ACCEPTANCE by Buyers:**

The undersigned agrees to the terms and conditions of the Bankruptcy Addendum A and acknowledges receipt of a copy hereof.

Buyer: _____

Printed Name: Robert C Chang

Date: 10/8/20    Time: 9:41 pm

Buyer: _____

Printed Name: _____

Date: _____    Time: _____

Brian J. Mullen, Trustee    Date: 10/8/2020

Brian J. Mullen, not individually but in his capacity
as Chapter 7 Trustee for the bankruptcy estate of
Joseph Carl Mulac and Mary Ellen Mulac, Case No. 2:20-bk-04173-BKM

2

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Buyer(s): Robert C. Chang
Seller(s): Brian Mullen BK Trustee for the estate of Joseph and Mary Mulac
Property: 7411 E Jackrabbit Rd Scottsdale, AZ 85250

This disclosure is intended to provide direct notice that the following entities may be considered "Affiliated Businesses":
-Ocean Real Estate & Investments, LLC & Ocean Real Estate Services, LLC (collectively referred to as "Ocean Real Estate")
-Ocean Title, LLC ("Ocean Title")
-City Vision National Revitalization, LLC ("CV")
-BK Global, Inc. ("BKG")

An affiliated business arrangement may exist when a single individual or entity holds an ownership interest in two or more separate entities that each provide real estate transaction services and one or more individuals or entities have an ownership interest in two or more of the aforementioned Affiliated Businesses.

Ocean Real Estate & Investments, LLC, Ocean Real Estate Services, LLC, City Vision National Revitalization, LLC and BK Global, Inc. may refer you to Ocean Title, LLC for escrow, title, closing, transaction coordination, document preparation, notary and/or other real estate related settlement service(s). Due to the overlapping entity ownership, the referral of a client or customer (including you) by any of the Affiliated Companies to another may provide the referring company, its owner(s), and/or employees with a financial benefit.

You are not required to use an Affiliated Company as a condition of the purchase or sale of the subject property or to obtain access to any settlement service. An exception may arise when the use of an Affiliated Company is agreed upon in writing pursuant to a purchase and sale agreement between you and the other party to the real estate transaction, or pursuant to an addendum to said agreement agreeing to the use of an Affiliated Company. In that instance, it is not the Affiliated Companies that are requiring the use of an Affiliated Company as a condition of the transaction or to obtain access to a settlement service, but possibly the other party pursuant to applicable contract law.

THERE MAY BE OTHER SETTLEMENT SERVICE PROVIDERS THAT PROVIDE SIMILAR SERVICES AND SUBJECT TO THE AFOREMENTIONED AGREEMENT BETWEEN THE PARTIES, CONTRACT OR ADDENDUMS THERETO, YOU ARE FREE TO SHOP AROUND IN AN EFFORT TO DETERMINE WHETHER YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THE SAME OR SIMILAR SERVICES.

Set forth below is the estimated* range of charges for each of the potential referred services. Please note that in many instances, the payor of a fee for any service(s) listed below may be determined by the Agreement between the parties or an Addendum thereto and as a result, it is possible that a buyer may not be responsible to pay for one or more of the following services:

| | |
|---|---|
| Closing Fee | $595 - $1,495 (plus actual expenses incurred) |
| Title Abstract Fee/Exam Fee | $100 - $250 per parcel |
| Owner's Policy | $5.75 per $1,000 of coverage up to $100,000 (minimum $100); add $5.00 per $1,000 above $100,000 but below $1M; add $2.50 per $1,000 above $1M but below $5M; add $2.25 per $1,000 above $5M but below $10M |
| Lender's Title Policy | $250.00 if issued simultaneously with Owner's Policy; if not, $5.75 per $1,000 of coverage up to $100,000 (minimum $100); add $5.00 per $1,000 above $100,000 but below $1M; add $2.50 per $1,000 above $1M but below $5M; add $2.25 per $1,000 above $5M but below $10M; add $2.00 per $1,000 over $10M |
| Policy Endorsements | Florida Form 9 Endorsement and Navigational Servitude Endorsement: 10% of the combined fees for Lender's and Owner's Policies, Other Endorsements (4.1, 5.1, 6 and 8.1): $25 each |
| Closing Coordination Fee | $295 - $795 (only applicable when Ocean Title is not the title agent) |

*TRANSACTION SPECIFIC FEE QUOTE AVAILABLE UPON REQUEST

ACKNOWLEDGEMENT: I/we have read this Affiliated Business Arrangement Disclosure Statement and understand that one of the Affiliated Companies may refer me/us to another Affiliated Company for escrow, title, closing and/or other related settlement service(s) and that any such referral(s) may provide the referring company, its owner(s), and/or employees with a financial benefit.

Buyer: _Robert Chang_ Date: 9/24/2020

Seller: _Brian Mullen, Trustee_ Date: 10/8/2020

Anderson and Anderson Real Estate LLC

# RESIDENTIAL BUYER'S INSPECTION NOTICE
# AND SELLER'S RESPONSE (BINSR)

Document updated:
June 2020

**ARIZONA**
*association of*
**REALTORS®**
REAL SOLUTIONS. REALTOR® SUCCESS.

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

 

1. Contract dated: **October**     **1st**    , **2020**
                      MONTH          DAY        YEAR
2. Seller: **See Line346**
3. Buyer: **Robert C. Chang**
4. Premises Address: **7411 E JACKRABBIT RD, Scottsdale, AZ  85250**

## BUYER INSPECTIONS AND INVESTIGATIONS COMPLETED
(See Section 6j)

Buyer has completed all desired Inspection Period items, such as:
(a) physical, environmental, and other inspections and investigations;
(b) inquiries and consultations with government agencies, lenders, insurance agents, architects, and other persons and entities;
(c) investigations of applicable building, zoning, fire, health, and safety codes;
(d) inquiries regarding sex offenders and the occurrence of a disease, natural death, suicide, homicide or other crime on the Premises or in the vicinity;
(e) inspections and investigations pertaining to square footage, wood-destroying organisms or insects, sewer, flood hazard, swimming pool barriers, and insurance; and
(f) inspections and investigations of any other items important to Buyer.

Buyer has verified all information deemed important including:
(a) MLS or listing information; and
(b) all other information obtained regarding the Premises.

Buyer acknowledges that:
(a) All desired Inspection Period inspections and investigations must be completed prior to delivering this notice to Seller;
(b) All Inspection Period items disapproved must be provided in this notice;
(c) Buyer's election is limited to the options specified below; and
(d) Buyer is not entitled to change or modify Buyer's election after this notice is delivered to Seller.

Buyer elects as follows:

☐ **Premises Accepted** – No corrections requested. Buyer accepts the Premises in its present condition and no corrections or repairs are requested.

☐ **Premises Rejected** – Buyer disapproves of the items listed below and elects to immediately cancel the Contract.

☒ Buyer elects to provide Seller an opportunity to correct the disapproved items listed below.

Items disapproved: **During inspection we have uncovered the following items that need to be addressed or repaired. We estimate the cost of these repairs to be around $105,143.35. We are willing to accept a credit or reduction in price to be used towards repairs after closing.**

---

**PLUMBING:**

**1. Main water supply – pressure regulator – is leaking and not properly controlling pressure. Should be at 75 PSI and is at 120 PSI – possibility for pipe burst & Cause mold & foundation damages (**LIABILITY ISSUE) (Reference:S-67 and S-68).**

**2. Water Supply – laundry room washer – leaking (Reference: S-71).**

**3. Northwest and Southwest – Guest shower/tub – diverter valve does not isolate fully in shower mode (Reference:S-78).**

**4. Northwest guest bathroom –toilet handle is broken (Reference: S-83).**

**5. Master bathroom toilet – continuously flows (Reference: S-84).**

**6. Hose bib – on guest house and main house – are leaking(Reference: S-90).**

**7. Wet bar – off of kitchen – has a drain leak (Reference: S-98).**

**8. All bath tub & shower faucets are Non-Functional.**

---

&gt;&gt;

Anderson and Anderson Real Estate LLC 15972 N. 115th Way Scottsdale, AZ 85255
Phone: 602-910-2480          Fax:               Hugh Anderson                                                    BINSR

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Electronically Signed using eSignOnline™ [ Session ID : 1b67e83c-dc3f-4760-91b4-c2d5ed0ea514 ]

DocuSign Envelope ID: C7A2278C-89E9-47AD-AFEE-C6A572A0A3EC

**STRUCTURAL:**
1. There are signs of rodents living in the attic (pictures of traps and feces)(Reference: S-9).
2. No firewall separating garage from main house - fire hazard/does not meet fire code(Reference: S-191).

**APPLIANCES:**
1. Microwave - does not work and needs to be replaced & Cost to replace is $819(quote)(Reference: S-147).
2. Icemaker - does not work - service indicator light is On & Cost to repair is estimated $300 (Reference: S-151).
3. Wine Storage refrigerator - needs servicing & Cost to repair is estimated $400.
4. BBQ Outdoor Refrigerator is broken & Cost to replace is $789(quote).
5. Two trash Compactors are not functioning and missing components (Reference: S-74)

**POOL EQUIPMENT:**
1. New pool heater needs to be replaced & Cost to replace is estimate $2050(Reference: S-110 & S-230).
2. Multiple Pop Up cleaning heads are missing (Reference: S-209 & S-231).
3. Pumps, filters, and pipes are leaking (Reference: S-217-223).

**ROOFING:**
1. Tile repair / debris removal & Cost to repair is $5750(quote)(Reference: S-52 & S-61).
2. Flat Roof is deteriorated & Cost to replace is $4500(quote)(Reference: S-56).
3. Roof underlayment is nearing end of it's life and will need to be replaced & Cost to replace is $46,875(quote).

**DOORS & CABINETS:**
1.Motorized Sliding Doors - do not operate properly(Reference: S-48).
2.Sliding Door - off kitchen eating area - does not latch properly(Reference: S-48).
3.Wooden Cabinets and doors are badly scratched and need lots of touching up.

**\*\* To be continued:**
Please see the additional items for repairs or replacement & quotes in attached pages.

Buyer acknowledges that Broker(s): (1) make no representations concerning the competency of any inspectors, contractors and/or repair persons and assume no responsibility for any deficiencies or errors made; and (2) neither Seller nor Broker(s) are experts at detecting or repairing physical defects in the Premises. The undersigned agrees to the modified or additional terms and conditions named and acknowledges receipt of a copy hereof.

*Robert Chang*                    10/18/2020
**X BUYER'S SIGNATURE**          MO/DA/YR        **X BUYER'S SIGNATURE**          MO/DA/YR
Robert C. Chang

# BUYER'S WAIVER OF INSPECTIONS

BUYER ACKNOWLEDGES THAT BUYER WAS ADVISED TO OBTAIN INSPECTIONS OF THE PREMISES BY QUALIFIED INSPECTOR(S) AND BUYER DECLINED. By acting against Broker's advice, Buyer accepts responsibility and hereby releases, indemnifies and holds harmless Brokers from any and all liability for all matters that professional inspections could have revealed.

**X BUYER'S SIGNATURE**          MO/DA/YR        **X BUYER'S SIGNATURE**          MO/DA/YR
Robert C. Chang
                                                                                                          >>

Residential Buyer's Inspection Notice and Seller's Response • Updated: June 2020 • Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        BINSR

Case 2:20-bk-04173-BKM   Doc 196   Filed 11/13/20   Entered 11/13/20 11:03:26   Desc
Main Document      Page 28 of 36

Electronically Signed using eSignOnline™ [ Session ID : 1b67e83e-de3f-4790-91b4-d2d5bd0c41dd ]

## SELLER'S RESPONSE

### TO BE COMPLETED ONLY IF BUYER PROVIDES SELLER AN OPPORTUNITY TO CORRECT ITEMS DISAPPROVED ON PAGES 1-2. (See Section 6j)

If Buyer provides Seller an opportunity to correct items disapproved, Seller shall respond within five (5) days or otherwise specified days after delivery of this notice.

Seller responds as follows:

☐ Seller agrees to correct the items disapproved by Buyer pursuant to terms set forth herein and Section 6j of the Contract.

☐ Seller is unwilling or unable to correct any of the items disapproved by Buyer.

☒ Seller's response to Buyer's Notice is as follows:

Seller agrees to a concession of $50,000 in lieu of inspection repairs proposed by buyer via Buyer's Inspection notice dated 10/18/2020. Seller will not conduct any of the proposed repairs. Instead, the Seller agrees to reduce the purchase price by agreed-upon concession amount, evidenced via a separate addendum.

The undersigned agrees to the modified or additional terms and conditions, if any, and acknowledges receipt of a copy hereof.

✓ *Brian J Mullen, Trustee* 10/21/2020

^ SELLER'S SIGNATURE | MO/DA/YR | ^ SELLER'S SIGNATURE | MO/DA/YR
See Line 346    Brian Mullen, BK Trustee for the estate of Joseph and Mary Mulac

## BUYER'S ELECTION

### TO BE COMPLETED ONLY IF SELLER HAS NOT AGREED TO CORRECT ALL ITEMS DISAPPROVED (See Section 6j)

☐ Buyer elects to cancel this Contract

☒ Buyer accepts Seller's response to Buyer's Notice and agrees to close escrow without correction of those items Seller has not agreed in writing to correct.

The undersigned agrees to the modified or additional terms and conditions, if any, and acknowledges receipt of a copy hereof.

*Robert Chang*      10/22/2020

^ BUYER'S SIGNATURE | MO/DA/YR | ^ BUYER'S SIGNATURE | MO/DA/YR
Robert C. Chang

Residential Buyer's Inspection Notice and Seller's Response • Updated: June 2020 • Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    BINSR



Electronically Signed using eSignOnline™ [ Session ID : 78078c56-da3f-47d5-b1b4-c25fb00a5f1a ]

DocuSign Envelope ID: C7A2278C-89E9-47AD-AFEE-C6A572A0A3EC

UrbanCiti Realty

# ADDENDUM __3__



Document updated:
June 1993

ARIZONA
REALTORS'
REAL SOLUTIONS. REALTOR® SUCCESS

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.



1. This is an addendum originated by the ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant.
2. This is an addendum to the Contract dated _____ October 1, 2020 _____ between the following Parties:
3. Seller/Landlord: Brian Mullen, BK Trustee for the , estate of Joseph & Mary Mulac
4. Buyer/Tenant: Robert C. Chang
5. Premises: 7411 E Jackrabbit Rd, Scottsdale, AZ 85250-6467
6. The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the above referenced Premises:
7. **In connection to the terms agreed upon via Buyer's inspection notice and seller's**
8. **reponse form (BINSR) dated 10/18/2020, Buyer and Seller agree on a new purchase price**
9. **of $2,450,000.**
10. _____
11. **All other terms and conditions to remain the same as original offer and addenda.**
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____
21. _____
22. _____
23. _____
24. _____
25. _____
26. _____
27. _____
28. _____
29. _____
30. _____
31. _____
32. _____
33. _____
34. _____
35. _____
36. _____
37. _____
38. _____
39. _____
40. _____
41. _____
42. The undersigned agrees to the additional terms and conditions and acknowledges receipt of a copy hereof.

43. ✗ *Brian Mullen, Trustee 10/1/2020*            *Robert Chang*            10/22/2020
44. ☒ Seller ☐ Buyer                   MO/DA/YR        ☐ Seller ☒ Buyer        MO/DA/YR
45. ☐ Landlord ☐ Tenant                               ☐ Landlord ☐ Tenant
46. Brian Mullen, BK Trustee for the estate of
    Joseph and Mary Mulac
47. ☐ Seller ☐ Buyer                   MO/DA/YR        ☐ Seller ☐ Buyer        MO/DA/YR
48. ☐ Landlord ☐ Tenant                               ☐ Landlord ☐ Tenant

49. **For Broker Use Only:**

    Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
                                                                                                        MO/DA/YR

Addendum • Updated: June 1993 • Copyright © 1993 Arizona Association of REALTORS®. All rights reserved.

UrbanCiti Realty, 4400 N Scottsdale Rd #9270 Scottsdale AZ 85251
Phone: (480) 993-0901        Fax: (866) 889-7043        Reena Khairi, Broker, GRI        7411 E Jackrabbit
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



*HK*

Electronically signed using eSignOnline™ [ Session ID : 1e67ed5e-9f34-47c6-91b9-e8d2bdca514 ]



# Short Sale Affidavit

Clear Entries

As relates to a certain real estate purchase contract dated ___10___ / ___08___ / ___2020___
concerning the following Mortgaged Premises located at the following property address:

| Address | 7411 EAST JACKRABBIT ROAD | | | | |
|---------|---------------------------|--|--|--|--|
| City | PARADISE VALLEY | State | AZ | ZIP | 85250 |

under which the existing Lender(s) has agreed to accept less than full payoff of the debt owed in exchange for release of the Mortgaged Premises (a short sale), each of the signatories hereto hereby certify and affirm under penalty of perjury, that to the best of their knowledge and belief;

    (a) The sale of the Mortgaged Premises is an "arm's length" transaction, between the parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

    (b) There are no agreements, understandings or contracts between the parties that the Seller will remain in the Mortgaged Premises as a tenant or later obtain title or ownership of the Mortgaged Premises;

    (c) Neither the Borrower(s) nor the purchaser(s) will receive any funds or commissions from the sale of the Mortgaged Premises, except as allowed by the short sale approval letter (if applicable);

    (d) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Mortgaged Premises that have not been disclosed to the Lender;

    (e) None of the signatories will receive any proceeds or other remuneration from this transaction except as set forth on the Settlement Statement/Closing Disclosure; and

    (f) None of the signatories have knowledge of any offer to purchase the Mortgaged Premises for a higher purchase price than the purchase price contained in the certain real estate purchase contract referenced above that has not been presented to the Lender(s).

Buyer(s) further certify and affirm under penalty of perjury, that;

    (g) The property will not be sold within 90 days of the closing date of the subject real estate purchase contract;

    (h) The property will not be rented to the Seller after the closing of the subject real estate purchase contract.

Each signatory also understands, agrees and intends that the Lender, any Investor (in particular Freddie Mac if applicable), Insurer or Guarantor, of the subject Mortgage are relying upon the statements made in the affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Mortgaged Premises and agrees to indemnify the Lender, any Investor (in particular Freddie Mac, if applicable), Insurer or Guarantor, of the subject Mortgage for any and all loss resulting from any negligent or intentional misrepresentation made in the affidavit including, but not limited, to repayment of the amount of the reduced payoff of the Mortgage. Each signatory further understands that a misrepresentation may subject the responsible party to civil and/or criminal liability and agrees that this certification will survive the closing of the transaction.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
©2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801
59337 (Rev 08 - 04/2016)



# Short Sale Affidavit

*Brian JMullen* 11/4/2020
_____
Seller           Date

Brian Mullen, BK Trustee for the estate of
Joseph Mulac and Mary Mulac
_____
Print Name

_____
Seller           Date

_____
Print Name

_____
Seller's Broker       Date

    Heena Khatri
_____
Print Name

UrbanCiti Realty & Property Management
_____
Print Company Name

_____
Buyer's Broker       Date

    Hugh Anderson
_____
Print Name

    Anderson & Anderson Real Estate LLC
_____
Print Company Name

_____
Buyer           Date

    Robert C. Chang
_____
Print Name

_____
Buyer           Date

_____
Print Name

_____
Settlement Agent       Date

Tracy Chavarria
_____
Print Name

American Title Service Agency LLC
_____
Print Company Name

_____
Transaction Facilitator (if any)       Date

_____
Print Name

_____
Print Company Name

_____
Print Company Address

_____
Print Company Address

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
©2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



# Short Sale Affidavit

As relates to a certain real estate purchase contract dated __10__ / __08__ / __2020__     [ Clear Entries ]
concerning the following Mortgaged Premises located at the following property address:

| Address | 7411 EAST JACKRABBIT ROAD | | | | |
|---|---|---|---|---|---|
| City | PARADISE VALLEY | State | AZ | ZIP | 85250 |

under which the existing Lender(s) has agreed to accept less than full payoff of the debt owed in exchange for release of the Mortgaged Premises (a short sale), each of the signatories hereto hereby certify and affirm under penalty of perjury, that to the best of their knowledge and belief;

(a) The sale of the Mortgaged Premises is an "arm's length" transaction, between the parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

(b) There are no agreements, understandings or contracts between the parties that the Seller will remain in the Mortgaged Premises as a tenant or later obtain title or ownership of the Mortgaged Premises;

(c) Neither the Borrower(s) nor the purchaser(s) will receive any funds or commissions from the sale of the Mortgaged Premises, except as allowed by the short sale approval letter (if applicable);

(d) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Mortgaged Premises that have not been disclosed to the Lender;

(e) None of the signatories will receive any proceeds or other remuneration from this transaction except as set forth on the Settlement Statement/Closing Disclosure; and

(f) None of the signatories have knowledge of any offer to purchase the Mortgaged Premises for a higher purchase price than the purchase price contained in the certain real estate purchase contract referenced above that has not been presented to the Lender(s).

Buyer(s) further certify and affirm under penalty of perjury, that;

(g) The property will not be sold within 90 days of the closing date of the subject real estate purchase contract;

(h) The property will not be rented to the Seller after the closing of the subject real estate purchase contract.

Each signatory also understands, agrees and intends that the Lender, any Investor (in particular Freddie Mac if applicable), Insurer or Guarantor, of the subject Mortgage are relying upon the statements made in the affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Mortgaged Premises and agrees to indemnify the Lender, any Investor (in particular Freddie Mac, if applicable), Insurer or Guarantor, of the subject Mortgage for any and all loss resulting from any negligent or intentional misrepresentation made in the affidavit including, but not limited, to repayment of the amount of the reduced payoff of the Mortgage. Each signatory further understands that a misrepresentation may subject the responsible party to civil and/or criminal liability and agrees that this certification will survive the closing of the transaction.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
©2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801
593371 (Rev 08 - 04/2016)



# Short Sale Affidavit

| | |
|---|---|
| Seller _____ Date | Seller _____ Date |
| Brian Mullen, BK Trustee for the estate of Joseph Mulac and Mary Mulac | |
| Print Name | Print Name |

| | |
|---|---|
| Seller's Broker _____ Date | Buyer's Broker _____ Date 11-4-2020 |
| Heena Khatri | Hugh Anderson |
| Print Name | Print Name |
| UrbanCiti Realty & Property Management | Anderson & Anderson Real Estate LLC |
| Print Company Name | Print Company Name |

| | |
|---|---|
| Buyer _____ Date | Buyer _____ Date |
| Robert C. Chang | |
| Print Name | Print Name |

| | |
|---|---|
| Settlement Agent _____ Date | Transaction Facilitator (if any) _____ Date |
| Tracy Chavarria | |
| Print Name | Print Name |
| American Title Service Agency LLC | |
| Print Company Name | Print Company Name |
| Print Company Address | Print Company Address |

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
©2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801
593371 (Rev 03 - 09/2016)



# Short Sale Affidavit

As relates to a certain real estate purchase contract dated __10__ / __08__ / __2020__    | Clear Entries |
concerning the following Mortgaged Premises located at the following property address:

| Address | 7411 EAST JACKRABBIT ROAD | | | | |
|---|---|---|---|---|---|
| City | PARADISE VALLEY | | State | AZ | ZIP 85250 |

under which the existing Lender(s) has agreed to accept less than full payoff of the debt owed in exchange for release of the Mortgaged Premises (a short sale), each of the signatories hereto hereby certify and affirm under penalty of perjury, that to the best of their knowledge and belief;

   (a) The sale of the Mortgaged Premises is an "arm's length" transaction, between the parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

   (b) There are no agreements, understandings or contracts between the parties that the Seller will remain in the Mortgaged Premises as a tenant or later obtain title or ownership of the Mortgaged Premises;

   (c) Neither the Borrower(s) nor the purchaser(s) will receive any funds or commissions from the sale of the Mortgaged Premises, except as allowed by the short sale approval letter (if applicable);

   (d) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Mortgaged Premises that have not been disclosed to the Lender;

   (e) None of the signatories will receive any proceeds or other remuneration from this transaction except as set forth on the Settlement Statement/Closing Disclosure; and

   (f) None of the signatories have knowledge of any offer to purchase the Mortgaged Premises for a higher purchase price than the purchase price contained in the certain real estate purchase contract referenced above that has not been presented to the Lender(s).

Buyer(s) further certify and affirm under penalty of perjury, that;

   (g) The property will not be sold within 90 days of the closing date of the subject real estate purchase contract;

   (h) The property will not be rented to the Seller after the closing of the subject real estate purchase contract.

Each signatory also understands, agrees and intends that the Lender, any Investor (in particular Freddie Mac if applicable), Insurer or Guarantor, of the subject Mortgage are relying upon the statements made in the affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Mortgaged Premises and agrees to indemnify the Lender, any Investor (in particular Freddie Mac, if applicable), Insurer or Guarantor, of the subject Mortgage for any and all loss resulting from any negligent or intentional misrepresentation made in the affidavit including, but not limited, to repayment of the amount of the reduced payoff of the Mortgage. Each signatory further understands that a misrepresentation may subject the responsible party to civil and/or criminal liability and agrees that this certification will survive the closing of the transaction.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
©2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801
593371 (Rev 00 - 04/2016)



# Short Sale Affidavit

| Seller | Date | Seller | Date |
|---|---|---|---|
| Brian Mullen, BK Trustee for the estate of Joseph Mulac and Mary Mulac | | | |

Print Name

_[signature]_  11/05/20

Print Name

| Seller's Broker | Date | Buyer's Broker | Date |
|---|---|---|---|

Heena Khatri

Hugh Anderson

Print Name

Print Name

UrbanCiti Realty & Property Management

Anderson & Anderson Real Estate LLC

Print Company Name

Print Company Name

_[signature]_  11/4/20

| Buyer | Date | Buyer | Date |
|---|---|---|---|

Robert C. Chang

Print Name

Print Name

_[signature]_  11.5.2020

| Settlement Agent | Date | Transaction Facilitator (if any) | Date |
|---|---|---|---|

Tracy Chavarria

Print Name

Print Name

American Title Service Agency LLC

Print Company Name

Print Company Name

7033 E. Greenway Pkwy #150

Print Company Address

Print Company Address

Scottsdale, AZ 85254

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
©2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801
593371 (Rev 00 - 04/2016)